UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEBORAH GORMLEY
                            :     NO. 1:09-CV-00549
      Plaintiff,         :
                            :
                            :
      v.                 :     **OPINION AND ORDER**
                            :
ROBERT SYMINGTON,         :
                            :
      Defendant.       :

        This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or Alternatively to Transfer Venue (doc. 15) and Plaintiff's Response in Opposition (doc. 19). Also before the Court is Plaintiff's Motion for Attorney Fees (doc. 20), and Defendant's Response in Opposition (doc. 24). For the reasons indicated herein, the Court denies both motions.

**I. Background**

        Plaintiff Deborah Gormley ("Gormley"), an Ohio citizen, brings claims of conversion and fraud against her brother Robert Symington, ("Symington"), a Florida citizen, in relation to the handling of their Mother's finances (doc. 1). The basic facts are as follows. In January, 2007, Defendant visited his then-ailing mother, Wanda Merkle, in Clermont County, Ohio (<u>Id</u>.). During the visit Plaintiff alleges that Defendant promised Plaintiff that if Plaintiff transferred control of their Mother's liquid assets to

Defendant, he would pay their Mother's bills (Id.).  At the time, their Mother was in poor medical condition and required on-going nursing care (Id.).[1]

Plaintiff claims she reasonably relied on Defendant's promises when in 2007 she transferred her Mother's liquid assets, $217,000.00, into an escrow account and then into a bank account in Broward County, Florida (Id.).  In late 2007, Plaintiff became aware that her Mother's nursing home bills were months behind in payment and the nursing home advised Plaintiff that her mother would be evicted from the facility if the bills remained unpaid (Id.).  Plaintiff claims she made several attempts to get Defendant to pay the bills, which all failed, and Plaintiff was ultimately forced to use her own funds to pay for her Mother's care (Id.).

In February of 2008 Plaintiff engaged counsel to write Defendant a letter demanding payment and an accounting (Id.). Defendant did not respond to the letter (Id.).  In August of the same year Plaintiff filed her Complaint in this Court, alleging diversity jurisdiction, and seeking compensatory and punitive damages in excess of $900,000.00 (doc. 1).

On March 15, 2010, Defendant filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), premised on the theory that this Court lacks personal jurisdiction over him, a

---

[1]On March 10, 2008, the parties' Mother died due to her health problems.

Florida citizen (doc. 15).  Shortly thereafter, Plaintiff filed her response in opposition to Defendant's Motion (doc. 19).  On April 16, 2010, Plaintiff filed a Motion for Order Assessing Defendant Fees and Costs in Making Service (doc. 20) to which Defendant filed a Response in Opposition (doc. 24).  These matters are both ripe for the Court's consideration.  The Court will first direct its attention to the question of personal jurisdiction.

**II. The Fed. R. Civ. P. 12 (b)(2) Standard**

A court may determine its jurisdiction on the basis of written materials, when a defendant files a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2).  <u>Mimco Inc. v. Virginia Iron & Metal Recycling, Inc.</u>, 840 F. Supp. 1171, 1173 (S.D. Ohio 1993) ("plaintiff need only demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.")  When considering whether personal jurisdiction exists, the Court will consider the facts and evidence in the light most favorable to the plaintiff and cannot consider facts proffered by the defendant that conflict with any offered by the plaintiff.  <u>Bird v. Parsons</u>, 289 F.3d 865, 871 (6th Cir. 2002).  In a diversity case, personal jurisdiction must be appropriate both under the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment.  Accordingly, to determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to limits of the Due Process

-3-

Clause.  <u>Reynolds v. International Amateur Athletic Fed.</u>, 23 F.3d
1110, 1115 (1994).

      The applicable Ohio long arm statute allows an Ohio court
to exercise personal jurisdiction over nonresidents of Ohio on
claims arising from the person's acting directly or by an agent to
1) transact any business in Ohio; 2) contract to supply services or
goods in Ohio; 3) cause tortious injury by an act or omission in
Ohio; or 4) cause tortious injury in Ohio by an act or omission
outside Ohio if he regularly does or solicits business, engages in
any other persistent course of conduct, or derives substantial
revenue from goods used or consumed or services rendered in Ohio;
5) cause injury in Ohio to any person by breach of warranty
expressly or impliedly made in the sale of goods outside Ohio when
he might reasonably have expected such person to use, consume, or
be affected by the goods in this state, provided that he also
regularly does or solicits business, or engages in any other
persistent course of conduct, or derives substantial revenue from
goods used or consumed or services rendered in this state; 6) cause
tortious injury in Ohio to any person by an act outside Ohio
committed with the purpose of injuring persons, when he might
reasonably have expected that some person would be injured thereby
in this state; 7) cause tortious injury to any person by a criminal
act, any element of which takes place in Ohio, which he commits or
in the commission of which he is guilty of complicity; 8) have an

-4-

interest in, using, or possessing real property in Ohio; or 9) contract to insure any person, property, or risk located within Ohio at the time of contracting. O.R.C. Ann. §2307.382 (2010). Although the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause, the Court's central inquiry is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice." Caphalon v. Rowlette, 228 F.3d 718 (2000)(citing Cole v. Mineti, 133 F.3d 433, 436 (6th Cir. 1998) and Goldstein v. Christiansen, 70 Ohio St.3d 232, 638 N.E. 2d 541, 545 n.1)(Ohio 1994)(per curiam)), International Shoe Co. v. Washington, 326 U.S. 310 (1945). The Court must employ three criteria to make this determination:

> (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;
>
> (2) the cause of action must arise from the defendant's activities there; and,
>
> (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Youn v. Track, Inc., 324 F.3d 409, 418 (6th Cir. 2003).

**III. Analysis**

**A. The Parties' Arguments Regarding Personal Jurisdiction**

Defendant Symington argues the requirements for personal jurisdiction are not satisfied under either Ohio's long-arm statute or due process (doc. 15). Symington argues he does not have the minimum contacts necessary to support exercising personal jurisdiction (Id.). Specifically, Symington argues he and the Plaintiff have a sibling relationship (Id.). Thus, in Defendant's view, there is no evidence to substantiate any type of business relationship or transaction between the two parties (Id.).

Symington claims he is not subject to Ohio's long-arm statute because he does not have any conduct in Ohio that would subject him to the statute (Id.). Symington also points out that Plaintiff transferred the funds from a bank account in the State of New Jersey to his bank in Florida (Id.). Symington argues that his visits to see his ailing mother in Ohio do not amount to purposeful availment such that a nonresident defendant would anticipate being haled into an Ohio court (Id.).

Defendant moves in the alternative for a transfer to the Southern District of Florida (Id.). Defendant contends that Florida is where a substantial part of the relevant events occurred and part of the property at issue is located there (Id.).

Plaintiff Gormley responds that Symington had substantial connections with Ohio and availed himself of the privilege of conducting business in Ohio (doc. 19). Specifically, Gormley argues Symington's agreement with Plaintiff to handle their

-6-

Mother's liquid assets and pay her nursing home and other bills was a business arrangement (Id.). Plaintiff alleges in both her Complaint and Affidavit that Defendant made false promises in Ohio and thereby induced Plaintiff, on behalf of her Mother, to transfer $217,000.00 to Defendant (Id.). Plaintiff also argues that Defendant used the services of their Mother's accountant, Charles Bastin, which shows they conducted a business transaction. Plaintiff also claims that even if Defendant never came to Ohio but solely made all his promises by phone and e-mail from Florida, Ohio courts have interpreted the state's long-arm statute to include non-resident defendants who negotiate with an Ohio resident simply by telephone (Id.).

Plaintiff asserts that venue is proper and appropriate in this court because most of the operative events occurred in Ohio (Id.). Plaintiff claims that the relevant events in this action involve Defendant's conversations with Plaintiff in Ohio, which included his promise to handle all of their Mother's liquid assets (Id.). Therefore, because a substantial part of this claim arose in Ohio, Plaintiff argues that venue is proper and appropriate with this Court (Id.).

**B. This Court Has Personal Jurisdiction Over the Defendant**

The Court must determine whether the exercise of personal jurisdiction over Defendant comports with the Ohio long-arm statute and due process. Having reviewed this matter, the Court finds that

the Defendant is properly within its jurisdiction. The Court finds that during Defendant's several trips to Ohio to visit his ailing mother, he also discussed taking control of his mother's liquid assets. The facts show that Defendant discussed the transaction with his Mother's accountant, and also that he discussed with nursing home staff in Ohio about being billed in Florida. Under these circumstances the Court finds no real question that Defendant engaged in a business transaction in the state of Ohio, thus satisfying O.R.C. § 2307.382(A)(1).

The Court next must determine whether Defendant's activities in Ohio constitute "purposeful availment" such that he would not be haled into court in Ohio solely as a result of "random," "fortuitous," or "attenuated" contacts with the jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462 (U.S. 1985). Defendant's Motion argues that Symington's contact with Ohio was simply a result of his choice to visit his ailing mother and to provide love and companionship (doc. 15).

The Court finds the quality of Symington's relationship to the forum state in this case in line with Burger King. Here, Plaintiff alleges Symington came to Ohio for more than just to provide love and companionship to their ailing mother, but to consult with Plaintiff about the transfer of money. Plaintiff claims Symington took the money that was supposed to be used to pay their Mother's bills and converted it to his own use. Under

-8-

these allegations, Symington has acted in Ohio and has caused foreseeable consequences to Plaintiff, a citizen of Ohio. Plaintiff's causes of action for fraud, conversion, and breach of contract are all related to the alleged misuse of the money Symington allegedly stole from Plaintiff.  These alleged acts of Symington are substantial enough to make the Court's exercise of jurisdiction over him reasonable.  Youn v. Track, Inc., 324 F.3d 409, 418 (6th Cir. 2003).  For these reasons, the Court denies Defendant's Motion to Dismiss for Lack of Personal Jurisdiction as to Symington.

## IV. Plaintiff's Motion for Attorney's Fees

On April 16, 2010, Plaintiff filed a motion for attorney's fees in the amount of $480 in making service and $1050 associated with the motion (doc. 20) to which Defendant has filed a Response in Opposition (doc. 24).  Plaintiff alleges in her motion that because of the difficulty in locating Defendant for purposes of service, Plaintiff's counsel had to file a motion to extend the time within which Defendant must be served (doc. 20). Because of the many unsuccessful efforts to obtain service on defendant, Plaintiff's counsel had already retained a second process server to serve Defendant in this action (Id.).  Plaintiff claims that Defendant's refusal to waive service subjects him to a mandatory financial obligation under Fed. R. Civ. P. 4(d)(2)(A) and (B) (Id.).

-9-

In Defendant's Response, he states that Rule 4(d)(2) allows a Defendant to waive service for good cause (doc. 24). Defendant argues that in his prior motion for extension of time that he had to undergo multiple back surgeries in October and November of 2009 (Id.). Furthermore, Defendant states after his October 2009 surgery an anesthesiologist severed his vocal cord, which required aggressive therapy to treat (Id.). Defendant asserts that his severe health constraints and multiple back surgeries is a good cause for waiving service (Id.). Defendant also noted that his Florida counsel, Mr. Hale, informed Plaintiff's counsel, Mr. Woliver, that he would not waive service and provided Mr. Woliver with his contact information but was never contacted by Mr. Woliver (Id.).

Rule 4(d)(2) of the Federal Rules of Civil Procedure provides:

> Failure to Waive.  If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:  (A) the expenses later incurred in making service; and (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

The Court agrees with the Defendant that his health constraints, multiple back surgeries, and therapy treatment, constitute good cause for not waiving service.  The Court finds that Defendant has showed good cause because of his physical state at the time when the Complaint was filed in a Court over 1,100

miles away from his domicile. Plaintiff's counsel could have contacted Defendant's counsel following the receipt of Defendant's letter and contact information but failed to do so. For these reasons, the Court denies Plaintiff's Motion for Attorney Fees for costs in making service.

**V. Conclusion**

The Court finds that Defendant Symington is properly before this Court, as his contacts and transactions with Ohio and Ohio citizens give rise to personal jurisdiction over him under both the Ohio long arm statute and the requirements of due process. The Court also finds that Defendant had good cause not to return the signed waiver because of his health condition at the time. Therefore, Defendant's refusal to waive service will not subject him to a mandatory financial obligation.

Accordingly, the Court DENIES Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (doc. 15) and DENIES Plaintiff's Motion for Attorneys Fees (doc. 20).

SO ORDERED.


Dated: August 17, 2010          s/S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge